IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | |
|---|---|
| MICHELLE SOUCIE, <br><br> **Plaintiff** <br><br> v. <br><br> CITY OF BRAIDWOOD, ILLINOIS, <br><br> Defendant, | 17-cv-5235 <br><br> Hon. John R. Blakey |

**PLAINTIFF'S MEMORANDUM IN
OPPOSITION TO SUMMARY JUDGMENT**

Plaintiff, Michelle Soucie, submits this Memorandum in opposition to the motion of defendant, City of Braidwood, illinois. In further opposition to summary judgment plaintiff concurrently files her Response to defendants' LR 56.1 Statement ("RSF "), her own Statement of Additional Facts ("SAF") and the Declaration of plaintiff, Michelle Soucie. ("Soucie Dec.").

**Introduction and Background**

Plaintiff has filed four claims against defendant, her employer[1],the City of Braidwood, Illinois, She alleges sex discrimination, including sexual harassment / hostile work environment under Title VII and

---

[1] Plaintiff is a current employee, of the City of Braidwood, but defendant is attempting to terminate her employment. As a police officer, she is entitled to specific procedural protections under State law. Although Braidwood officials discussed their intention to fire plaintiff at a closed session of the City Council *more than two years ago*, on November 22, 2016, they have not yet interviewed her as to the facts of her alleged misconduct. Not until after the close of discovery in this case did they serve her with Charges, on December 11, 2018, which are presently pending.

the Illinois Human Rights Act ("IHRA") as well as Retaliation under State and Federal law in response to her engagement in protected activities.

The law and the facts require that summary judgment be denied. on each of plaintiff's claims.

Introduction and Background

Beginning in 1998, plaintiff was employed by the Police Department for defendant. (SAF ¶ ). She served in a series of roles with increasing responsibilities. (SAF ¶ ) In July, 2015 she was appointed Deputy Chief of the Braidwood Police Department. (SAF ¶ ).She was very well qualified for this position by her training and experience. (SAF ¶ ).

Nicholas Ficarello became employed as defendant's Chief of Police in April, 2015. Ficarello infected the workplace with sexually-tinged remarks, on an ongoing basis. (SAF ¶¶ ). For example, he bragged repeatedly that he had slept with fifty-eight women referring to them as "dancers and strippers." He put his arm around plaintiff in an unwelcome gesture while they were discussing a possible police department hire, and said "You rub my back, I'll rub yours." (SAF ¶ ) He insisted that plaintiff wear heels in connection with a law enforcement conference in Chicago . (SAF ¶ ). He urged plaintiff to leave her husband on several occasions. . (SAF ¶ )

Sometime during the summer of 2016, Ficarello had a "funny feeling" that plaintiff, whose duties included processing the police department's payroll (SAF ¶ ), had improperly made a payment to her husband, a sergeant.[2] Ficarello says that he confronted plaintiff about this mistaken payment in September, 2016, but, according to plaintiff, he never asked her about it. (SAF ¶ ) In November, 2016, Ficarello started telling the Mayor and a City Commissioner, Eric Tessler, about his "funny feeling," and Tessler then put the issue on the City Council's agenda for discussion at a closed session on November 22, 2016.

---

[2]Allen Soucie was granted a disability pension on June 6, 2016, after which he was not a member of the Braidwood Police Department.

Plaintiff was completely unaware of Ficarello's suspicions or the discussion about her future at the City Council's closed session. (SAF ¶ )

On December 15 , 2016, plaintiff's husband hand-delivered a letter to Mayor Vehrs which stated plaintiff's complaints about Ficarello's harassing conduct. (SAF ¶  ) The mayor says that he does not recall this. Ficarello wasclearly aware of the letter, even if the Mayor says he was not, because he asked plaintiff a question about its contents. (SAF ¶  )

Plaintiff continued performing her police department responsibilities, including processing the payroll, until defendant suspended her on January 17, 2017.(SAF ¶  ).  Plaintiff attributed this abrupt action to a retaliatory motive on the part of Ficarello after her complaint letter had been submitted.

After suspending plaintiff, Ficarello assigned civilian employees to "investigate" the supposed payroll impropriety. (DSF) Although the discussion on November 22, 2016 included several references to the need to interview plaintiff, such an interview has never occurred. (SAF ¶ )

Plaintiff engaged in additional protected activities after her suspension when she filed a Charge of Discrimination with the EEOC and with the Illinois Department of Human Rights, and when she filed this case. In October and November, 2018, plaintiff's counsel deposed Ficarello, Vehrs and Tessler, as well as a civilian employee of defendant, Tari Atherton. (SAF ¶  ). Thus, all of these officials were necessarily aware that plaintiff was continuing to engage in protected activities. Then, on December 11, 2018, after the close of discovery and after maintaining the status quo with respect to plaintiff's employment for nearly two years, defendant served plaintiff with Charges seeking the termination of her employment.( SAF ¶  ). This was more than two years after the topic of firing plaintiff was first discussed at the closed session of the City Council meeting on November 22, 2016. In plaintiff's view, the Charges constitute further Retaliation in violation of Title VII and the IHRA. SAF ¶  ).

.

**ARGUMENT**

I.. **Summary Judgment Standard**

FRCP 56 provides that summary judgment may be entered, and a party's right to trial by jury lost, when the court determines that there is no genuine issue of material fact[3], and the moving party is entitled to judgment a matter of law. Courts should grant summary judgment when the moving party shows that no genuine dispute exists as to any material fact and the evidence weighs so heavily in the moving party's favor [*7] that the moving party "must prevail as a matter of law." *Nat'l Cont'l Ins. Co. v. Singh, No. 17-cv-2603, 2018 U.S. Dist. LEXIS 136941, at *6-7 (N.D. Ill. Aug. 14, 2018)*, citing *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505 (1986)* and *Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548 (1986)*..

In reviewing a motion for summary judgment, the Court gives the nonmoving party "the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP, 719 F.3d 785, 794 (7th Cir. 2013).Armour v. Homer Tree Servs., No. 15 C 10305, 2017 U.S. Dist. LEXIS 175476, at *13 (N.D. Ill. Oct. 24, 2017)*

II. **Plaintifff'sClaims**

We will address plaintiff's claims in the same reverse chronological sequence which defendant used in its brief.

A. **Retaliation**

---

[3] Here, defendant has submitted a LR 56.1 Statement of supposedly undisputed factss and incorporated this Statement into its argument, although myriad paragraph thereof assert supposed facts which arre not referenced in any way in its argument. Plaintiff urges the Court to ignore this surplusage.

The elements of a violation of Title VII's retaliation provision are straightforward. A plaintiff who engages in protected activity,suffers adverse employment action , and can show a causal connection between the two should prevail on such claims.[4] *Baines v. Walgreen Co., 863 F.3d 656, 661 (7th Cir. 2017)*. Here, defendant does not dispute that plaintiff's December 15, 2016 letter to the Mayor constitutes protected activity.[5] Nor can it reasonably dispute that plaintiff took additional protected actions and is continuing to do so by prosecuting this case.

Defendant also cannot reasonably dispute that it took adverse employment action against plaintiff on January 17, 2017 when it suspended her from her position as Deputy Chieff. Plaintiff has identified other, less severe issues of retaliation as well.[6]

The crux of the retaliation claim, therefore, is whether there was a causal connection between plaintiff's internal complaint to the Mayor and her suspension shortly thereafter. Understandably plaintiff thought the suspension was retaliatory when she filed this case,, because of the suspicious timing and because she knew nothing about the discussion at a closed session of the City Council. On November 22, 2016. (SAF at ¶   ). Disclosure of the discussion negatively impacts causation evidence with respectto the sequence of events under case law cited by defendant.

Defendant's subsequent conduct, however, demonstrates a continuing pattern of illegal retaliation. On December 11 , 2018, shortly after its officials gave depositions in this case,, and

---

[4] We agree with defendant that the Title VII and IHRA claims may be analyzed in the same way.

[5] Under defendant's policy against ssexual harassment, plaintiff was directed to take her complaint to the Mayor. (DSF at ¶  ).

[6] Without forfeiting these potential claims as possible trial evidence , plaintiff submits that the Court need only consider the suspension in order to find that defendant took adverse employment action.

without any conclusion to a supposed criminal investigation by an outside agency, defendant issued Charges with the goal of terminating plaintiff's employment and changing her status from paid suspension pending investigation to unpaid. (SAF at ¶   ).

On this record, plaintiff is entitled to a favorable inference that the course of action discussed on November 22, 2016 had been all but abandoned, before defendant was motivated to take further adverse employment action against her, and that hte triggering events were when it was forcefully reminded that she was prosecuting this case–i.e. engaging in a protected activity-- during the depositions of its officials. Moreover, there is ample evidence from which a jury could find that the supposed reason for taking disciplinary action–Ficarello's "funny feeling," that plaintiff had made an unauthorized payroll payment--was pretextual.   Most tellingly, defendant left plaintiff in charge of processing its payroll for several months after September 6, 2016, when. Ficarello says that she admitted making an improper payment to her husband, until January 17, 2017. Additionally, Ficarello attempted to sway other city officials' opinions by communicating his baseless "belief" that "DC Soucie already knows about the plans to conduct a UPODA hearing on her." while simultaneously admitting on November 28, 2016., that "the investigation is not yet complete"(Ficarello Dec., Ex. B (ECF 50-4)

Plaintiff did not admit the payroll error; she and Ficarello never had such a conversation. (SAF at ¶  )  All of this evidence is at odds with a sincere belief that there was supposed criminal activity which supports plaintiff's termination. See also *Harden v. Comcast, No. 16 C 1931, 2018 U.S. Dist. LEXIS 212561 (N.D. Ill. Dec. 18, 2018)* (summary judgment denied where defendant's "investigation" sufficiently questionable to indicate pretext.)

"Evidence that an employer lied about the reasons for an adverse employment action permits a trier of fact to infer that the decision was actually motivated by discriminatory animus".Because a fact-finder may infer intentional discrimination from an employer's untruthfulness, evidence that calls truthfulness into question precludes a summary judgment." *O'Neal v. City of New Albany, 293 F.3d 998, 1005 (7th Cir. 2002), quoting Perdomo v. Browner, 67 F.3d 140, 145 (7th Cir. 1995).Baines v. Walgreen Co., 863 F.3d 656 \*, 2017 U.S. App. LEXIS 12469,* "[R]etaliatory motive may be established through circumstantial evidence such as suspicious timing, ambiguous statements, evidence that the stated reason for the employment decision is pretextual and"other evidence from which an inference of discriminatory intent might be drawn. *Gracia v. Sigmatron Int'l, Inc., 842 F.3d 1010, 1019 (7thCir. 2016) (emphasis supplied).*relying upon *Reeves v. Sanderson PlumbingProds., 530 U.S. 133, 137, 120 S. Ct. 2097, 2103 (2000)(*"proof that the employer's explanation s unworthy of credence is a form of circumstantial evidence that is probative of intentional discrimination and may be persuasive, as the trier of fact, in appropriate circumstances, may reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose"}.

As the ongoing retaliatory conduct is recent[7], defendant has not addressed it in its Motion;. it has not provided a non-retaliatory reason for the timing of the Charges. But plaintiff contends

---

[7] In case there is a question whether plaintiff needs to exhaust administrative remedies with respect to the recent retaliation, plaintiff will file a new EEOC Charge within the next ten days, ; request issuance of a Right to Sue letter, and promptly file a companion case as a related case. We think this will elevate form over substance because there is evidence in this case to show that the Charges are retaliatory..

that reviving the disciplinary proceeding, after saying that it would await the outcome of a criminal investigation appears to be pretext for retaliation.

According to Ficarello's Declaration in support of summary judgment (ECF 50-4) "As of May 21, 2018, the {Illinois State Attorney Appellate Prosecutor's] office claimed that its case [investigating plaintiff] was active." (Para. 24.) There is nothing in the record to attempt to explain the current status of this investigation. If IAAPO closed the investigation without taking action, that would logically mean that defendant had an opportunity to make a fresh decision how to proceed. If the IAAPO investigation is still "active" as reported last May, what is anon-retaliatory motive for the Charges?

Defendant is incorrect in criticizing plaintiff for not identifying a comparitor. (Def. Mem. (ECF 51) at p. 7. The Seventh Circuit no longer requires the division of evidence into separate "piles" under the "direct" or indirect" method. *Ortiz v. Werner Enterprises, Inc. 834 F.3d 760* (7th *Cir. 2016).*[8]

---

[8] In both the November 22, 2016 closed session discussion and in the Charges, defendany includes the conclusion that plaintiff jeopardized police operations when she shared information about undercover operations with her husband after he was no longer a police officer. ( cites0 Plaintiff denies that this occurred, but explained that her husband asked her about officers whom he had seen behind Subway in Braidwood "after the fact. Moreover, the story about an interrupted operation, comes wholly from Ficarello. In response to a discovery request for documents relating to this supposed incident, defendant produced only a Case Report which is entirely inconsistent with Ficarello's theory. (SAF ¶  ).Against this background, defendant could not have had an honest belief that plaintiff shared confidential information improperly.

**B. Sexual Harassment / Hostile Work Environment**

Defendant's approach to plaintiff's sexual harassment clais downplays Ficarello's conduct as "banter." and treats the reported incidents as a series of discrete occurrences. This approach is at odds with the requirement that inferences on this Motion be drawn in plaintiff's favor, as she is the non-movant.

Everything that occurred must be considered in the context of the reporting relationship,. Ficarello as Chief, had an inherent degree of influence over plaintiff, who was his deputy. Defendant considers its police department to be "a para-military organization." (ECF 50-2at p. 3 of transcript of closed seeion on November 22, 2016.) A reasonable jury might take into account the chain of command in evaluating the implicit demands in Ficarello's statements, even when he did not explicitly demand sex from a female subordinate. Plaintiff found the pattern of his conduct increasingly offensive over time. (SAF at ¶  )..

The series of events should be considered together. ", [A]lthough each incident of alleged harassment standing alone might not be objectively severe, it is at least a jury question whether the alleged pattern of harassment, when viewed together, rose (or sunk) to that level. It is a close call, but at this stage, the Court cannot say that no reasonable jury would find that [the harasser';s ] behavior was so severe that it altered the conditions of[ the plaintiff's] mployment. *Gracia v. Sigmatron Int'l, Inc., No. 11-cv-07604, 2013 U.S. Dist. LEXIS 153399, at *23 (N.D. Ill., 2013).(citations omitted* The incidents raised by plaintiff include Ficarello's demand that plaintiff and a female co-worker wear high heels to a business related dinner. *See, e.g., EEOC v. Int'l Profit Assocs., 647 F. Supp. 2d 951 (N.D. Ill. 2009).*

The Seventh Circuit's very recent decision in *Swyear v. Fare Foods Corp.,* 911 F.3d 874 *(7th Cir. 2018)* seems, at first blush, to reject as not "severe" the conduct of a male employee who invited the plaintiff to cuddle on the bed in a hotel room, and who continually banged on the plaintiff's hotel room door after she asked him to leave. *Swyear* is distinguishable, however, because the harasser there was not the plaintiff's supervisor, as the District Court noted. "Scott [the harasser] was not Swyear's supervisor for Title VII purposes *Swyear v. Fare Foods Corp., No. 16-CV-1214-SMY-RJD, 2018 U.S. Dist. LEXIS 72804, at \*16 (S.D. Ill. Apr. 27, 2018).* The reporting relationship in this case, in contrast, necessarily enhances the harassing quality of Ficarello's conduct.

Taken together, there is sufficient evidence from which a jury could find for plaintiff on her sexual harassment claims.

## **Conclusion**

There are genuine issues of material fact here. They preclude summary judgment for defendant. Plaintiff respectfully requests that its Motion be denied.

Respectfully submitted,

MICHELLE SOUCIE

By: /s/ Kathryn E. Korn
One of Plaintiff's Attorneys

Hall Adams , III
Law Offices of Hall Adams
33 N. Dearborn Street Suite 2350
Chicago, IL 60602
(312) 445-4900Email:
hall@adamslegal.net

Kathryn Ellen Korn
 8501 West Higgins
Suite 270
Chicago, IL 60631
773 444-0041
   kathrynkorn@aol.com

.